IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEONARD A. MORRISON, III,

    Plaintiff,

v.                                      Civil Action No. 3:19CV77

NURSE HEFFNER, et al.,

    Defendants.

**MEMORANDUM OPINION**

Leonard Morrison, III, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Morrison's Particularized Complaint (ECF No. 10).[2] The matter is before the Court on DEFENDANTS' MOTION FOR SUMMARY JUDGMENT filed by Defendants Carlisle and Epperson

---

[1] The Court employs that pagination assigned by the CM/ECF docketing submission for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization.

[2] Morrison names as Defendants the following individuals: Nurse Katie Topham, Nurse Heffner, Nurse Olga Barton, Dr. Moreno, Sgt. Epperson, Sgt. Carlisle, and Superintendent of the Hampton Roads Regional Jail in 2017. Counsel for the Jail Defendants made an appearance on behalf Christopher Walz, the current Superintendent of the Hampton Road Regional Jail. (ECF No. 34-1, ¶ 1.) David Simmons was the Superintendent of the Hampton Road Regional Jail in 2017. (Id. ¶ 4.) Because Morrison fails to state a viable claim against the Superintendent of the Hampton Roads Regional Jail in 2017 and the Court summarily dismisses all claims against him, see infra Part I, no need exists to correct this discrepancy.

("the Jail Defendants"). For the reasons set forth below, the Motion for Summary Judgment (ECF No. 32) will be granted.

### I. MORRISON'S ALLEGATIONS AND CLAIMS

Morrison has been incarcerated in the Jail since April 30, 2018. (Walz Aff. ¶ 5.) On May 2, 2018, he was found guilty in the Circuit Court of the City of Virginia Beach of two counts of first- degree murder, two counts of robbery, and four counts of use of a firearm during the commission of a felony. Morrison v. Hampton Police Department, et al., 3:18CV527, ECF No. 49-6 (E.D. Va. filed May 5, 2020).

Morrison is paralyzed from the waist down following a shooting. (Compl. 1.) After he was discharged from the hospital, Morrison was incarcerated in the Hampton Roads Regional Jail ("the Jail"). (Id.) Morrison asserts that Defendants violated his rights under the Eighth Amendment by subjecting him to cruel and unusual punishment.[3] The following claims remain before the Court:[4]

  Claim One  (a) Katie Topham violated Morrison's rights by admitting Morrison into the Jail and

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] By Memorandum Opinion and Order entered on May 13, 2021, the Court dismissed the claims against Defendants Heffner and Moreno because Morrison failed to serve them in a timely manner.

2

|  | placing him in a cell with a defective air mattress. (<u>Id.</u> at 3.)<br>(b) Katie Topham "once refused to clean [Morrison's] bed dressing until 1 hr. passed, leaving [Morrison] to lie in [his] feces, and then once she came to change them, told [Morrison] the he will] need to start doing [it] for [himself] knowing full well [Morrison] had no equilibrium because [his] injury was less than a month fresh." (<u>Id.</u> at 4-5.) |
|---|---|
| Claim Two | On or about November 18, 2018, (<u>id.</u> at 3), Sgt Carlisle violated Morrison's rights by transferring Morrison "to the mental health side of the facility placing [him] in the direct path of physical harm." (<u>Id.</u> at 4.) |
| Claim Three | Olga Barton "took [her] time changing [Morrison's] bed dressing on several different occasions as well as refused to rotate [his] laying positions and the result was a stage 2 pressure ulcer . . . ." (<u>Id.</u>) |
| Claim Four | On April 1, 2019, (<u>id.</u> at 3), Sgt. Epperson violated Morrison's rights by moving Morrison "into non-handicap room and the[n] verbally communicating his disregard for [Morrison's] physical condition." (<u>Id.</u> at 4.) |

Only Claims Two and Four are presented for a decision by the Jail Defendants' Motion for Summary Judgment. Defendants Barton and Topham have made an appearance, but have not filed a dispositive motion.

## II. CLAIMS AGAINST THE SUPERINTENDENT OF THE HAMPTON ROADS REGIONAL JAIL

Before turning to the Jail Defendants' Motion for Summary Judgment, it is appropriate to address of Morrison's claims against

3

the Superintendent of the Hampton Road Regional Jail. By Memorandum Order entered on September 24, 2019, the Court directed Morrison to file a particularized complaint and to include therein a list of the defendants. When Morrison filed the Particularized Complaint, the last listed defendant was the "Superintendent of the Hampton Roads Regional Jail in 2017." (ECF No. 10, at 1.) However, in the body of the Particularized Complaint, Morrison never mentioned the Superintendent of the Hampton Roads Regional Jail in 2017.

"Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing U.S. ex rel. Brzozowski v. Randall, 281 F. Supp. 306, 312 (E.D. Pa. 1968)); 28 U.S.C. § 1915(e)(2). Accordingly, all claims against the Superintendent of the Hampton Roads Regional Jail in 2017 will be dismissed without prejudice.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant

4

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there

5

is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, the Jail Defendants submitted, inter alia: (1) the affidavit of Superintendent Christopher Walz ("Walz Aff.," ECF No. 34-1); (2) the affidavit of Defendant Epperson ("Epperson Aff." ECF No. 34-2); the affidavit of Defendant Carlisle ("Carlisle Aff." ECF No. 34-3); and, the Jail's policy for classification of inmates and the Jail's record of Morrison's movements within the Jail, which the Court refers to by their CM/ECF designation. Morrison has not responded to the Motion for Summary Judgment with any admissible evidence.[5]

---

[5] Morrison has submitted several unsworn responses. (ECF Nos. 36, 38.)

## IV. SUMMARY OF PERTINENT UNDISPUTED FACTS

At the Jail, "all cell assignments are made by classification officers and the medical department." (Walz Aff. ¶ 7.) Sergeants and other non-classification officers do not make cell assignments. (Id.) "Jail officers move inmates between cells only at the direction of a classification officer." (Id.)

### A. Morrison's Move To The Mental Health Unit

In July 2018 and thereafter, Sgt. Carlisle was a Housing Unit supervisor at the Jail and assigned to medical housing. (Carlisle Aff. ¶ 3.)

> In both the medical infirmary (Pod 1) and the mental health unit (Pod 2), there are two negative pressure cells that are larger than regular infirmary and mental health beds and have an en suite shower. The negative pressure cells in the mental health unit are apart from the other cells and inmates assigned to those cells for medical, not mental health reasons, do not mix with the mental health inmates and have the same privileges as inmates in the infirmary. Pod 2 G – Cell HJ-15 is one of the two negative pressure cells in the mental health unit that is larger and has an en suite shower.

(Id. ¶¶ 4-6 (paragraph numbers and spacing omitted).) On October 1, 2018, Morrison was moved to Pod 2 G – Cell HJ-15. (ECF No. 34-5, at 1.) Sgt. Carlisle was not responsible for the decision to move Morrison to that cell. (Carlisle Aff. ¶ 7.)

### B. Morrison's April 1, 2019 Move

In April of 2019, Sgt. Epperson was the Housing Unit Supervisor for Housing Unit 1 at the Jail. (Epperson Aff. ¶¶ 3,

7

4.)  "Housing Unit 1 has four sections:  the infirmary; mental health; and two sections for administrative segregation."  (Id. ¶ 4.)

"On April 2, 2019, classification directed that [Morrison] be moved from Unit 1: Floor 1: Block 1 D — Cell EF 16 to Unit 1: Floor: Block Pod 1 F - Cell 105."  (Id. ¶ 5.)  Cell EF 16 "is a large cell, with its own shower."  (Id. ¶ 6.)  "Block Pod 1 F-Cell 105 is also a cell within the infirmary, but it does not have its own shower.  Pod 1 F has a wheelchair accessible shower."  (Id. ¶ 6.)  When Sgt. Epperson attempted to move Morrison to Cell 105 at the direction of the Jail classification officers, Morrison refused to move from the larger cell.  (Id. ¶ 7.)  Sgt. Epperson told Morrison that, if he refused to move, he would receive a disciplinary charge for refusing a direct order.  (Id.)  Thereafter, Sgt. Epperson moved Morrison to Block Pod 1 F-Cell 105.  (ECF No. 34-5, at 1.)

## V.  ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)."  Iko v.

8

Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Id. (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing Wilson, 501 U.S. at 301-03). Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting Hudson, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether

a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. Id. at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." Id. at 1381.

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing

10

Farmer, 511 U.S. at 837; Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2). As explained below, Morrison fails to satisfy the subjective prong for his alleged Eighth Amendment claims.

In Claim Two, Morrison contends that Sgt Carlisle violated his rights by moving him to one of the negative pressure cells in the mental health unit. Morrison has offered no evidence to show that the challenged move posed a substantial risk of serious harm to his person. Nor has Morrison provided evidence to show that Sgt. Carlisle acted with deliberate indifference by moving Morrison to this cell. Accordingly, Claim Two will be dismissed.

In Claim Four, Morrison contends that Sgt. Epperson subjected him to cruel and unusual punishment by moving him to a smaller cell that lacked its own shower. Once again, there is no evidence to show that such a move posed a substantial risk of serious harm to Morrison's person. Nor has Morrison provided evidence to show that Sgt. Epperson acted with deliberate indifference by moving

11

Morrison to this cell. Accordingly, Claim Four will be dismissed with prejudice.

## VI. CONCLUSION

All claims against the Superintendent of the Hampton Roads Regional Jail in 2017 will be dismissed without prejudice. The Jail Defendants' Motion for Summary Judgment (ECF No. 32) will be granted. Claims Two and Four will be dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to Morrison and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 10, 2021