IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



LEONARD A. MORRISON, III,

    Plaintiff,

v.                                                  Civil Action No. 3:19CV77

NURSE HEFFNER, et al.,

    Defendants.

MEMORANDUM OPINION

Leonard Morrison, III, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Morrison's Particularized Complaint ("Complaint," ECF No. 10).[2] The matter is before the Court on DEFENDANTS TOPHAM AND BARTON'S JOINT MOTION FOR SUMMARY JUDGMENT ("Motion for Summary Judgment," ECF No. 47). For the reasons set forth below, the Motion for Summary Judgment (ECF No. 47) will be granted.

---

[1] The Court employs that pagination assigned by the CM/ECF docketing submission for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization.

[2] Morrison names as Defendants the following individuals: Nurse Katie Topham, Nurse Heffner, Nurse Olga Barton, Dr. Moreno, Sgt. Epperson, Sgt. Carlisle, and Superintendent of the Hampton Roads Regional Jail in 2017. By Memorandum Opinions and Orders entered on May 13, 2021, and June 10, 2021, the Court dismissed Morrison's claims against all of the other Defendants except for Defendants Barton and Topham. (ECF Nos. 41-44.)

## I. MORRISON'S RELEVANT ALLEGATIONS AND CLAIMS

Morrison is paralyzed from the waist down following a shooting. (Compl. 1.)[3] After he was discharged from the hospital, Morrison was incarcerated in the Hampton Roads Regional Jail ("the Jail"). (Id.) Morrison asserts that Defendants violated his rights under the Eighth Amendment by subjecting him to cruel and unusual punishment.[4] The following claims remain before the Court:

| | |
|---|---|
| Claim One | (a) Katie Topham violated Morrison's rights by admitting Morrison into the Jail and placing him in a cell with a defective air mattress. (Id. at 3.)<br>(b) Katie Topham "once refused to clean [Morrison's] bed dressing until 1 hr. passed, leaving [Morrison] to lie in [his] feces, and then once she came to change them, told [Morrison that he will] need to start doing [it] for [himself] knowing full well [Morrison] had no equilibrium because [his] injury was less than a month fresh." (Id. at 4-5.) |
| Claim Three | Olga Barton "took [her] time changing [Morrison's] bed dressing on several different occasions as well as refused to rotate [his] laying positions and the result |

---

[3] On May 2, 2018, Morrison was found guilty in the Circuit Court of the City of Virginia Beach of two counts of first- degree murder, two counts of robbery, and four counts of use of a firearm during the commission of a felony. Morrison v. Hampton Police Department, et al., 3:18CV527, (E.D. Va. filed May 5, 2020), ECF No. 49-6.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

was a stage 2 pressure ulcer . . . ." (Id. at 4.)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th

Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Defendants Topham and Barton submitted, inter alia: (1) the declaration of Defendant Topham ("Topham Decl.," ECF No. 48-2); (2) the declaration of Defendant Barton ("Barton Decl." ECF No. 48-3); and, Morrison's medical records (ECF No. 48-1).

At this stage, the Court is tasked with assessing whether Morrison "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must

4

respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Morrison failed to respond to the Motion for Summary Judgment, thereby failing to cite to any evidence that he wishes the Court to consider in opposition.[5] See Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Morrison's complete failure to present any evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants Topham and Barton's submissions in deciding the Motion for Summary Judgment. See Forsyth, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Morrison.

### III. SUMMARY OF PERTINENT UNDISPUTED FACTS

#### A. Morrison's Initial Admission To The Jail

On June 30, 2017, Morrison arrived at the Jail ("the Jail") after having been hospitalized for 18 days at the Riverside

---

[5] The Court notes that Particularized Complaint is not sworn to under penalty of perjury.

Regional Medical Hospital ("Riverside Hospital"). (Topham Decl. ¶¶ 3, 4.) Morrison's "hospitalization was for treatment to injuries to his spine and abdomen, after he was shot during an incident that resulted in him being charged with attempted capital murder." (Id. ¶ 4.) Upon his arrival at the Jail, Defendant Topham reviewed Morrison's medical records from Riverside Hospital and performed the standard medical intake review. (Id. ¶¶ 3, 4.) "[T]his process involve[d] observing and charting a patient's symptoms and medical history . . . to determine the proper housing and medical accommodations for the patient." (Id. ¶ 3.) Morrison's medical records reflected that he was discharged from the Riverside Hospital after having recovered from surgery. (Id. ¶ 4.) "Although [Morrison] was unable to move his lower extremities, at the time of his discharge, providers at Riverside Hospital noted that his condition was 'good' and that he was ready to undergo physical therapy." (Id.)

Having reviewed these records and Morrison's physical condition, Defendant Topham believed that the Jail could accommodate Morrison's medical needs. (Id. ¶ 5.) Additionally, Defendant Topham knew that if Morrison required outside care, the staff at the Jail could order that care. (Id.) Indeed, at Defendant Topham's request, Morrison was sent to an outside

6

hospital for physical and occupational therapy from July 20, 2017 through August 8, 2017. (Id. ¶ 5 n.1.)

### B. Morrison's Initial Cell Assignment And The Provision Of An Air Mattress

After Defendant Topham decided to admit Morrison to the Jail, she directed that Morrison be

> taken to the medical housing unit where he was placed in a negative pressure room. [Defendant Topham] selected this unit because it could accommodate [Morrison's] hospital bed, came with a handicap shower, and placed him closer to treaters who would regularly evaluate him without the need for scheduled appointments or sick calls. In sum, [Defendant Topham] assigned [Morrison] to this particular cell because [she] believed it would enhance his patient care and comfort.

(Id. ¶ 6(a).)

In his cell, Defendant Topham had Morrison placed in a hospital bed and asked the nurse on the next shift to put in an order for Morrison "to receive an air mattress overlay to relieve pressure on his back and Stage II pressure ulcers, which he had when he arrived." (Id. ¶ 6(b).)

> In the meantime, to relieve [Morrison's] discomfort, [Defendant Topham] placed blankets under his mattress to provide support at a 45-degree angle. After taking these steps on the evening of June 30, 2017, [Defendant Topham] was not personally involved in delivering the air mattress or responding to [Morrison's] issues with his hospital bed. However, when [Morrison] was evaluated by the jail physician on July 3, 2017, it was noted that [Morrison] was in a hospital bed with an air mattress. That record further noted that [Morrison's] only complaint of pain was from his surgical incision. This record is consistent with [Defendant Topham's]

7

understanding at the time that [Morrison] was receiving adequate accommodations and being treated by higher level providers.

(Id.)

### C. Evidence Related To Defendant Topham's Changing Of Morrison's Dressing

Defendant Topham denies that she ever knowingly waited an hour to provide Morrison with bedding. (Id. ¶ 7(a).) Defendant Topham notes Morrison's perception that she delayed providing him with clean bedding "may be explained by the fact that [she] had to go get [Morrison's] clean bedding from the medical supplies, which may have added more time to [Morrison's] wait then he would have liked." (Id. ¶ 7(b).) Defendant Topham swears that the rate at which she changed Morrison's bedding never posed a significant risk of harm to Morrison. (Id. ¶ 7(a).)

Defendant Topham instructed Morrison that he would have to learn to change his own bedding for his own good. (Id. ¶ 7(c).)

> As a new paraplegic, [Morrison] was at risk of losing certain motor skills if not used within a year of his injury. [Defendant Topham] wanted to make clear to [Morrison] that, if he were released, there would be no one to change his bedding for him. Consequently, he would need to commit to doing his own dressing changes so that he would not become totally dependent on others for the rest of his life. This advice was based on [Defendant Topham's] medical judgment and given for [Morrison's] benefit. . . .

(Id.) Defendant Topham did not believe that her actions placed Morrison at a significant risk of serious injury. (Id.)

8

### D. Evidence Related To The Defendant Barton's Changing Of Morrison's Bedding And Rotating Morrison's Position

When Morrison arrived at the Jail, his recent gunshot wounds impaired his ability to control his bowels. (Barton Decl ¶ 4.) Therefore, Morrison would often defecate in his bed. (Id.) As a nurse, Defendant Barton assisted in changing Morrison's bedding. (Id.) At not point did Defendant Barton purposefully delay changing Morrison's bedding. (Id.) Defendant Barton does not believe the rate at which she changed Morrison's bedding posed a significant risk of injury to Morrison. (Id.)

Although Morrison alleged that Defendant Barton's failure to rotate his position caused him a Stage II pressure ulcer, the record reflects that when Morrison arrived at the Jail he already had a Stage II pressure ulcer. (Id. ¶ 5.) When Defendant Barton first treated Morrison on July 1, 2017, Morrison already had a Stage II pressure ulcer. (Id.) Accordingly, the record demonstrates that Defendant Barton's lack of action did not cause Morrison's Stage II pressure ulcer. (Id.)

Further, Defendant Barton "did not refuse to rotate [Morrison's] laying position or otherwise disregard his ulcer treatment. Instead, the records show that [she] rotated [Morrison] or otherwise treated his ulcers on July 1, 2, 3, 12, 14, and 17 before he was sent out on July 20, 2017 for therapy." (Id. ¶ 6.)

Morrison

> was repositioned every day from July 1, 2017 until he was sent out to [physical therapy] on July 20, 2017. Similarly, Wound Care Flow Sheets show that [Morrison] received treatment for his ulcers every day during July 4-19, 2017. As an RN at the facility, [Defendant Barton] was aware that [Morrison] was receiving regular [and appropriate] treatment for his Stage II ulcers.

(Id. ¶ 7.) At no point did Defendant Barton believe that Morrison "was receiving wound care that placed him at a significant risk of serious injury." (Id.)

## IV. ANALYSIS

With respect to the claims presently before the Court, because Morrison was a "'pretrial detainee and not a convicted prisoner,' the Fourteenth Amendment, and not the Eighth Amendment, governs his claim[s]." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) (qouting Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). However, in the context, of inadequate medical care, to survive a motion for summary judgment under either the Eighth Amendment or Fourteenth Amendment, a plaintiff must demonstrate that the defendant acted with deliberate indifference to his serious medical needs. Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) ("[W]e need not resolve whether Brown was a pretrial detainee or a convicted prisoner because the standard in either case is the same—that is, whether a government official has been 'deliberately

10

indifferent to any [of his] serious medical needs.'" (second alteration in original) (quoting Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990))).[6]

A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious

---

[6] The Supreme Court of the United States has held that, for a pretrial detainee to establish an excessive force claim under the Fourteenth Amendment, he need not show that the officer was subjectively aware that the use of force was excessive; rather, he need only show that the force purposely, knowingly, or recklessly used against him was objectively unreasonable. Kingsley v. Hendrickson, 576 U.S. 389 (2015). However, Kingsley did not address whether this standard applies to other claims by pretrial detainees pursuant to the Fourteenth Amendment, and, to date, the United States Court of Appeals for the Fourth Circuit has not considered this issue. See Mays, 992 F.3d at 301-02 n.4 (noting that the Fourth Circuit has yet to address whether Kingsley applies to other deliberate indifference claims by pretrial detainees and collecting other circuit court of appeals cases that are split on the issue); Sams v. Armor Corr. Health Servs., Inc., No. 3:19CV639, 2020 WL 5835310, at *19 n.19 (E.D. Va. Sept. 30, 2020) (noting that "absent a Fourth Circuit decision applying Kingsley to medical deliberate indifference claims, the Court will continue to apply well-settled Fourth Circuit precedent on this matter.").

harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners

12

will have unqualified access to health care" or to the medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

### A. Claims Against Defendant Topham

In the first part of Claim One (a), Morrison contends that, given his then existing medical condition, Defendant Topham acted with deliberate indifference by admitting him to the Jail. At the time Defendant Topham admitted Morrison to the Jail, Morrison had been discharged from Riverside Hospital after having recovered from surgery. Although Morrison could not move his lower extremities, the providers at Riverside Hospital noted that Morrison's condition was good and he was ready to undergo physical therapy. Morrison fails to point to anything in the record that indicates he should not have been released to the Jail. Moreover, Defendant Topham's personal assessment of Morrison's records, his condition, and the services and facilities available, reflected that Morrison could be adequately cared for at the Jail. Given

13

this record, Morrison fails to demonstrate that Defendant Topham acted with deliberate indifference by admitting him to the Jail.

Also as part of Claim One (a), Morrison contends that Defendant Topham violated his rights by issuing him a defective air mattress. Although the record reflects that Defendant Topham directed that Morrison be provided with an air mattress, the record does not demonstrate that the mattress was defective or that Defendant Topham was aware that the air mattress was somehow defective. Thus, Morrison has failed to demonstrate that Defendant Topham acted with deliberate indifference by providing him with an air mattress. Accordingly, Claim One (a) will be dismissed.

In Claim One (b), Morrison contends that, on one occasion Defendant Topham refused to clean his bedding for an hour after he defecated on himself and told him he would need to learn to change his own bedding. Nothing in the record permits a finding that a jury reasonably could find that Defendant Topham knowingly delayed in changing Morrison's bedding. Additionally, Defendant Topham's instruction to Morrison that he would need to learn to change his bedding is indicative of her concern for his well-being rather than deliberate indifference. Defendant Topham concluded that Morrison, as a newly paralyzed individual, would lose motor skills if he did not use them and would be unable to care for himself in the future. Because Morrison fails to demonstrate that Defendant

14

Topham acted with deliberate indifference, Claim One (b) will be dismissed.

### B.  Claims Against Defendant Barton

In Claim Three, Morrison contends that Defendant Barton "took [her] time changing [Morrison's] bed dressing on several different occasions as well as refused to rotate [his] laying positions and the result was a stage 2 pressure ulcer . . . ." (Compl. 4.) The record creates no triable issue on that allegation. First, a jury, on this record, could not reasonably find that Defendant Barton ever intentionally delayed in changing Morrison's bedding. Second, the record shows that Morrison arrived at the Jail with a Stage II pressure ulcer. There is no evidence that the ulcer was caused by Defendant Barton's lack of diligence. Finally, the record shows that Defendant Barton and other Jail personnel regularly rotated Morrison's position in order to prevent and/or diminish any pressure ulcers. Because Morrison fails to demonstrate that Defendant Barton acted with deliberate indifference, Claim Three will be dismissed.

15

## V. CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 47) will be granted. Claims One (a), One (b), and Three will be dismissed. The action will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Morrison and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 25, 2021